UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.

JONATHAN GELLMAN, an individual,
on behalf of himself and all others similarly
situated,

Plaintiff,

v.

TOYOTA MOTOR SALES, USA, INC.,
a California corporation.

_____Defendant._____/

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Jonathan Gellman, on behalf of himself and on behalf of a class of similarly situated persons throughout the state of Florida, makes the following allegations on information and belief based on an investigation reasonable under the circumstances, except as to those allegations pertaining to the named Plaintiff, which are alleged on personal knowledge.

**NATURE OF THE ACTION**

1.  On November 2, 2009, Toyota Motor Sales, U.S.A., Inc., announced a voluntary safety recall related to floor mats in certain Toyota and Lexus models of its automobiles. The recall was announced because the driver's floor mat could interfere with the accelerator pedal and cause it to get stuck in the wide-open position causing unintended acceleration of the vehicle. On November 25, 2009, Toyota announced details of a vehicle-based remedy, including reconfiguring the shape of the accelerator pedal, providing newly-designed replacement driver and front passenger side all-weather floor mats, and installing a brake override system in certain models. Toyota will start notifying owners of ES350, Camry, and Avalon models by the end of

2009 and will notify owners of the other models on a rolling schedule during 2010.  Plaintiff seeks damages resulting from the recall on behalf of himself and all others similarly situated.

2. Toyota admits that unintended acceleration may result in very high vehicle speeds and make it difficult to stop the vehicle, which could cause a crash, serious injury or death.

3. Toyota's actions give rise to violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201-501.2101 and other common law claims.

## PARTIES, JURISDICTION, AND VENUE

4. Plaintiff Gellman is a resident of Miami-Dade County and citizen of the State of Florida and is otherwise *sui juris*.  Plaintiff Gellman leased a 2010 Lexus IS250 in October 2009 from Lexus of North Miami in North Miami, Florida.

5. Defendant Toyota Motor Sales, USA, Inc. is a wholly owned subsidiary of Toyota Motor Corporation and is incorporated in California with its principal place of business in Torrance, California.  Toyota is in the business of manufacturing, producing, and distributing automobiles worldwide.  At all material times, Toyota has done, and continues to do, business in Florida and every other state in the nation.

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because this is a class action, as defined by 28 U.S.C. § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than the Defendant and the amount in controversy exceeds the sum or value of $5,000,000.  *See* 28 U.S.C. § 1332(d)(2).

7. This Court has jurisdiction over Toyota because a substantial portion of the wrongdoing alleged in this Complaint took place in Florida, Toyota is authorized to do business here, Toyota has sufficient minimum contacts with Florida and/or otherwise intentionally avails itself of the markets in Florida.  Toyota sells its products within the state of Florida and in

Miami-Dade County, rendering the exercise of jurisdiction by Florida courts permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this district because a substantial part of the events and/or omissions giving rise to Plaintiff's claims occurred in this district and/or Defendant Toyota is subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

9. Toyota has been operating in the United States since 1957 and is one of the largest automobile manufacturers in the world. In 2008 alone, Toyota sold more than 2.2 million vehicles in the United States. Toyota also sells its vehicles under the luxury brand name Lexus.

10. On or about August 2009, the National Highway Traffic Safety Administration (NHTSA), along with Toyota, launched an investigation relating to the unintended acceleration in some of its vehicles.

11. According to Toyota, the following models (hereinafter knows as "Vehicles") were affected:

|    | Years       | Make   | Model  |
|----|-------------|--------|--------|
| A. | 2007 – 2010 | Toyota | Camry  |
| B. | 2005 – 2010 | Toyota | Avalon |
| C. | 2004 – 2009 | Toyota | Prius  |
| D. | 2005 – 2010 | Toyota | Tacoma |
| E. | 2007 – 2010 | Toyota | Tundra |
| F. | 2007 – 2010 | Toyota | ES350  |
| G. | 2006 – 2010 | Lexus  | IS250  |
| H. | 2006 – 2010 | Lexus  | IS350  |

12. In response to the obvious defect, Toyota instructed consumers to remove the floor mats from the Vehicle.

13. Below is an example of how the floor mats obstruct the normal use of the accelerator pedal:



14.     Indeed, since the defective floor plan design, as admitted by Toyota, required the removal of the floor mats paid for by consumers, the floor mats are now worthless and useless.

15.     On November 25, 2009, Toyota announced details of a remedy, including reconfiguring the shape of the accelerator pedal, providing newly-designed replacement driver and front passenger side all-weather floor mats, and installing a brake override system in certain models.  However, the remedy does not fully compensate Plaintiff and Class members for their damages; for example, the remedy announced by Toyota does not provide for alternative transportation while consumers' vehicles are being repaired.

16.     Toyota has not stated when the newly-designed replacement driver and front passenger side all-weather floor mats will be provided or when the vehicle-based remedy will be provided, except to say that Toyota will start notifying owners of ES350, Camry, and Avalon models by the end of 2009 of the remedy process and will notify owners of the other models on a rolling schedule during 2010.  Toyota has not offered any compensation to Plaintiff and members of the Class for the loss of the use of the driver's floor mat.  Additionally, Plaintiff and members of the Class are left with no protection for the carpeting in their automobiles, which, without a floor mat, will become dirty and worn from exposure to water, snow, and dirt.

17. On October 29, 2009, The Office of Defects Investigations for the U.S. Department of Transportation and National Highway Traffic and Safety Administration ("ODI") found that there were 64 complaints of unwanted acceleration, resulting in 8 crashes and 15 injuries regarding Toyota's automobiles. *See* ODI Resume (attached as Exhibit A).

18. Of these complaints, fifty (50) or 78% of the total involved incidents of floor mat interference, including 7 (88%) of the crashes and all of the injuries.

19. ODI further found that the "only defect trend related to vehicle speed control in the subject vehicles involved the potential for accelerator pedals to become trapped near the floor by out-of-position or inappropriate mat installations." Exhibit A.

20. It is possible that additional Toyota vehicles will reveal the same potential for entrapment of the accelerator by floor mats because the floor mats and floor pan design are uniform.

21. Toyota's conduct, including instructing consumers to remove their floor mats without compensation, is a violation of FDUTPA, as well as other common laws.

## CLASS ACTION ALLEGATIONS

22. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

23. This class action is brought under Federal Rule of Civil Procedure Rule 23(a) and Rule 23(b)(3). Plaintiff submits that class action treatment is appropriate under either or both of these rules.

## I. SIZE AND DEFINITION OF THE CLASS

24. Plaintiff brings this class action on behalf of himself and all other similarly situated class members defined as: All persons throughout Florida who have purchased or leased Toyota's Vehicles during the class period.

25. The class consists of thousands of consumers. Upon information and belief, the identities of these consumers are known to Toyota through their own records or are otherwise ascertainable. Therefore, the proposed class is ascertainable but so numerous that joinder of all members is impracticable.

## II. COMMONALITY

26. There are questions of law and fact common in the class, because each and every class member is or will be asserting claims against Defendant. Common questions arise in every such case, including:

   a. whether Toyota issued a recall of certain driver's floor mats;

   b. whether the concerned recall instructs Plaintiff and Class members to take out driver's floor mats and not replace them;

   c. whether Toyota has reimbursed or compensated Plaintiff and Class members for the loss of the use of the driver's floor mats;

   d. whether the floor mats are rendered worthless to Plaintiff and Class members as a result of the recall;

   e. whether the vehicle based remedy adequately compensates Plaintiff and Class member for their damages;

   f. whether Toyota engaged in deceptive acts and practices in the marketing and sale of its Vehicles by failing to disclose the defects in its floor plan;

   g. whether Toyota's conduct amounts to an unfair and/or deceptive trade practice within the meaning of the Florida's Deceptive and Unfair Trade Practices Act;

   h. whether Plaintiff and members of the Class have sustained damages, and the proper measure of those damages;

      i.        whether Toyota has been unjustly enriched as a result of its conduct; and

      j.        whether Plaintiff and Class members are entitled to injunctive relief.

### III. TYPICALITY

27. The claims of Plaintiff who is representative of the class herein, are typical of the claims of the Class, because the Class members seek the identical remedy and the same injunction, namely to obtain the value of the worthless floor mats sold by Toyota to consumers.

28. The claims within the class are typical, because each and every member of the Class brings the same cause of action for damages and injunctive relief.

### IV. ADEQUACY OF REPRESENTATION

29. Plaintiff will fairly and adequately represent and pursue the interests of Class members. Plaintiff's counsel has vast experience in consumer class action cases. Plaintiff understands the nature of his claims herein, has no disqualifying conditions, and will vigorously represent the interests of the Class.

### V. REQUIREMENTS OF RULE 23(b)(3)

30. Certification is also appropriate under Rule 23(b)(3) because common issues predominate. The exact same issues will apply uniformly to each Class member seeking damages herein and injunctive relief as set forth explicitly in the common questions of law and fact listed above. Also, a class action is a superior methodology for the litigation of these issues because individual class members have no practical interest or ability to bring this action for damages or injunctive relief in their individual capacity.

### COUNT I- VIOLATIONS OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES

31. Plaintiff realleges and incorporates herein by reference paragraphs 1-30 of this Complaint.

32. This is a claim for violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201-501.2101.

33. FDUTPA, provides that unfair methods of competition, unconscionable acts and practices, and unfair or deceptive acts or practices in the conduct "of any trade or commerce" are unlawful. Fla. Stat. §501.204.  Under FDUTPA, "trade or commerce" is defined to include any advertisement or solicitation relating to any "thing of value."  Fla. Stat. §501.203(8).

34. Plaintiff and the class members are persons as defined and construed under the FDUTPA, Fla. Stat. §§501.201-501.213.

35. The practices employed by Toyota, whereby Toyota sells and markets its Vehicles without disclosing the dangerous defects in its floor plan design are unfair, deceptive and misleading.

36. Toyota's actions amount to unfair and/or deceptive acts in violation of the FDUTPA.

37. Even though Toyota knew or should have known of the defective nature of the Vehicles, it continued to sell the Vehicles to consumers without properly disclosing this defect or correcting the defect.

38. Toyota's sales practices were deceptive, misleading, and intended to increase their own profits to the detriment of the consumers. Toyota has profited from its uniform deceptive practices, in that Toyota received millions of dollars for floor mats and accelerator pedals which are useless and worthless causing Plaintiff and the Class substantial injuries.

39. Plaintiff and other members of the Class would not have paid for the useless and worthless floor mats if Toyota had disclosed the defects of their Vehicles.

40. Plaintiff and the Class members suffered actual damages as a result of Toyota's deceptive and unfair trade acts. Specifically, as a result of Toyota's deceptive and unfair trade acts and practices, Plaintiff and the Class members suffered monetary losses, i.e., the purchase price of the floor mats, which themselves are unfit for their intended purpose.

41. Plaintiff reserves the right to allege other violations of law that constitute unlawful business acts or practices based on the above-alleged conduct. Such conduct is ongoing and continues to this date.

**WHEREFORE**, Plaintiff and class members demand an award against Toyota for (1) actual and/or compensatory damages as provided by Fla. Stat. § 501.2075, (2) the costs of this proceeding and attorney's fees, as provided by Fla. Stat. § 501.2105, (3) an order enjoining Toyota from continuing its unfair and/or deceptive conduct, and (4) any such other relief as this Court deems just and proper.

## COUNT II—BREACH OF CONTRACT

42. Plaintiff incorporates by reference paragraphs 1 through 30 as if fully set forth herein and further alleges as follows.

43. Toyota provides Vehicles to the consuming public. Plaintiff and class members, through their agreement to purchase Toyota's Vehicles paid certain sums for the floor mats within the Vehicles.

44. Toyota had a duty under the contract to provide Vehicles which did not contain defects that would render the floor mats worthless and useless. Toyota materially breached the parties' contract when they provided worthless and useless floor mats with their Vehicles.

45. The contracts Toyota entered into with Plaintiff and the Class were identical as it relates to the payment of monies for the floor mats. Specifically, Toyota did not disclose that the

floor mats sold with the Vehicle, which ordinarily have their own inherent value, are useless and worthless.

46. Plaintiff and the Class has been damaged by Toyota's breach of contract in that they paid for floor mats which are worthless and not fit for their intended purpose.

47. Plaintiff and class members demand compensation for their loss of use and value of the floor mats purchased.

**WHEREFORE** Plaintiff and Class Members request that this Court enter judgment against Toyota and in favor of Plaintiff and the class for damages, including payment for the value of the floor mats, pre-judgment interest and such other relief as this Court deems just and appropriate.

## COUNT III- UNJUST ENRICHMENT

48. Plaintiff incorporates by reference paragraphs 1 through 30 as if fully set forth herein and further alleges as follows:

49. Toyota received from Plaintiff and Class Members monetary compensation from their purchase of Toyota's defective Vehicles which are excessive and unreasonable, and are the result of overcharging and overreaching.

50. As a result, Plaintiff and the class have conferred a benefit on Toyota, and Toyota has knowledge of this benefit and have voluntarily accepted and retained the benefit conferred on them.

51. Toyota will be unjustly enriched if it is allowed to retain such funds, and each Class member is entitled to an amount equal to the amount each Class member enriched Toyota and for which Toyota has been unjustly enriched.

52. This count is in the alternative and, if Plaintiff's other claims do not proceed, Plaintiff and the Class have no adequate remedy at law.

**WHEREFORE**, Plaintiff and Class members demand an award against Toyota for the amounts equal to the amount each class member enriched Toyota and for which Toyota has been unjustly enriched, and such other relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

53. Plaintiff, individually and on behalf of all others similarly situated, hereby demands a jury trial on all claims so triable.

Dated: January 4, 2010.                              Respectfully submitted,

s/ Lance A. Harke
Lance A. Harke, P.A.
lharke@harkeclasby.com
Florida Bar No. 863599
Sarah Clasby Engel, P.A.
sengel@harkeclasby.com
Florida Bar No. 991030
HARKE & CLASBY LLP
155 South Miami Ave., Suite 600
Miami, Florida 33130
Telephone:   (305) 536-8220
Telecopier:  (305) 536-8229

*Counsel for Plaintiff & Class Members*